[No. D055305. Fourth Dist., Div. One. Apr. 19, 2010.]

CAROLYN WALLACE, Plaintiff and Appellant, v.
GEICO GENERAL INSURANCE COMPANY et al., Defendants and
Respondents.

COUNSEL

Girardi & Keese and John A. Girardi for Plaintiff and Appellant.

Snell & Wilmer, Robert J. Gibson, Richard A. Derevan, Sheila Carmody and Todd E. Lundell for Defendants and Respondents.

OPINION

**IRION, J.**—Carolyn Wallace appeals from an order striking class allegations from the proposed class action lawsuit she filed against GEICO General Insurance Company, Government Employees Insurance Company, GEICO Casualty Company and GEICO Indemnity Company (collectively, GEICO). Wallace sued GEICO under Business and Professions Code section 17200 et seq.,[1] and other theories, alleging that GEICO wrongly denied coverage for body shop repairs performed at labor rates it considered to be above the prevailing rate. As we will explain, the trial court improperly concluded, as a predicate to its order striking the class allegations, that GEICO's offer of monetary compensation to Wallace after she filed her lawsuit caused her to lose standing as the representative plaintiff. Accordingly, we reverse the order striking the class allegations and remand for further proceedings.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Wallace's Proposed Class Action Complaint*

On August 7, 2007, Wallace filed a proposed class action complaint against her automobile insurance carrier, GEICO. According to Wallace, her vehicle

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

was damaged in a March 5, 2007 accident and required body work. She obtained an estimate from a repair shop of her choice and presented the estimate to GEICO. GEICO told her that it would not pay the full amount of the estimate because the hourly rate for labor charged by that business was above what GEICO considered to be the prevailing labor rate. Wallace had the repairs performed and paid the difference between what GEICO agreed to pay and what she was charged for the repairs.[2]

The operative first amended complaint alleges three causes of action: (1) unfair competition in violation of section 17200 et seq., premised in part on GEICO's alleged violation of the Insurance Code and related regulations in that it claimed prevailing labor rates without the proper support;[3] (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. Wallace brought the lawsuit on behalf of a proposed class composed of:

"all individuals who, within four years preceding the date of this complaint and continuing while this action is pending, met and meet all of the following criteria:

"—Resident of California;

"—Purchased automobile insurance from [GEICO];

"—Made a claim to [GEICO] for insurance coverage for automobile repairs;

"—Submitted to [GEICO] a written repair cost estimate from an automobile repair shop of their choice;

"—Whose claims were denied by [GEICO], either in whole or in part, because [GEICO] asserted that the labor rate in the automobile repair estimate exceeded the labor rate that [GEICO] [was] required to pay; and

"Were forced to either pay or become indebted to the automobile repair shop of their choice the difference between the rates provided by their automobile repair shop of their choice and the labor rate [GEICO] claim[s] [it was] required to pay."

On behalf of the class, Wallace sought damages, including punitive damages, injunctive relief, disgorgement and attorney fees.

---

[2] According to evidence in the record, the total repair bill was $1,414.68; Wallace's deductible was $500; and GEICO paid $527.12, but refused to pay the remaining $387.56, which Wallace paid out.

[3] Specifically, Wallace identified Insurance Code section 758.5, subdivision (d)(2) and related regulations as the provisions violated by GEICO's conduct.

## B. *GEICO's Motion for Summary Judgment*

GEICO filed a motion for summary judgment or in the alternative for summary adjudication. In support of its motion, GEICO submitted evidence of a stipulation that GEICO entered into with California's Department of Insurance (DOI) in April 2007, and an implementing order issued by California's Insurance Commissioner on May 2, 2007 (collectively, the consent order). The consent order was in response to orders to show cause that DOI issued in 2005 and 2006, and it covered the same subject matter as Wallace's complaint, namely GEICO's refusal to reimburse labor rates that it considered to be above the prevailing rate. In the consent order, GEICO was ordered to cease and desist from violations of certain Insurance Code provisions and related regulations; it agreed to submit a labor rate survey in compliance with existing law; and it was ordered to pay $60,000 to DOI. In addition, as highly relevant here, the consent order contained the following provisions regarding reimbursement of GEICO's insureds and other claimants:

"D. [GEICO] will conduct an internal audit of complaints submitted to [GEICO] or [DOI] since January 1, 2004 regarding labor rates to identify those claims, if any, where the insured or claimant paid an additional amount to the repair shop as a result of the difference in the labor rate charged by the repair shop and the amount paid by [GEICO]. [GEICO] shall reimburse the insured or claimant the additional amount paid no later than ninety days after [GEICO] [is] served with the Commissioner's Order approving final settlement of this matter. Further [GEICO] shall send [DOI] a report of the results of the audit and amounts reimbursed.

"E. Beginning no later than the 60 days after [GEICO] [is] served with the Commissioner's Order approving the final settlement of this matter,[4] [GEICO] shall calculate the cost of paint and materials on their repair estimates on an hour multiplied by rate basis only. . . .

"F. Any complaints concerning disputed labor rates or the calculation of paint and material on a repair estimate received by either [GEICO] or [DOI] during this 60 day period shall be submitted to [GEICO] and [GEICO] shall recalculate the labor rate on the estimate or the cost of paint and material and make the corresponding adjustment on the repair estimate that was the subject of the complaint and reimburse the insured or claimant the additional amount resulting from the adjustment. . . ." The consent order further provided that it represented "a complete resolution of the issues raised [by the relevant orders to show cause], as well as all complaints against [GEICO]

---

[4] As we have explained, the order by California's Insurance Commissioner was issued on May 2, 2007.

received by [DOI] on the issue of labor rates, steering, and paint and materials on or before 60 days after [GEICO] [is] served with the Commissioner's Order approving the final settlement of this matter. Complaints received after this 60 day period may be subject to further action by [DOI]."

In further support of its motion, GEICO submitted evidence that on October 10, 2007, just over two months after Wallace filed her lawsuit, GEICO sent a check for $387.56 to Wallace to cover the amount that Wallace paid out of pocket for the repair of her vehicle. GEICO's letter accompanying the check stated, "This payment is being made in accordance with the [consent order]."

GEICO argued, among other things, that summary judgment should be granted on the ground that Wallace's claims had been completely remedied, and thus Wallace's individual claims were moot and she lacked standing to pursue her class claims. According to GEICO, "[b]ecause the [consent order] covered Wallace's request for relief, her injuries have been remedied."

In opposition, Wallace argued that she did not lack standing and the case was not moot because, among other things, she did not accept the check tendered by GEICO, and she was injured by paying her insurance premiums in the expectation of obtaining coverage. However, Wallace also argued that even if she was found to lack standing to represent the proposed class, the trial court should allow the class action to proceed while she located a new representative plaintiff.

The trial court rejected GEICO's argument that the tender of payment by GEICO mooted Wallace's claims for relief on behalf of herself, as it was "undisputed [Wallace] had to employ legal counsel and pursue legal remedies to receive the $387.56." However, the trial court concluded that "[Wallace] does not have standing to serve as a putative class representative, given [GEICO] [has] tendered a check to her as of November 2008 in compliance with the directions of the [consent order], for the difference between what the insurer paid and what [Wallace's] repair shop . . . charged, thus removing any injury she may have suffered." The trial court ruled that it would give Wallace time to locate an adequate class representative, and it allowed Wallace to conduct discovery for that purpose.

C.  *GEICO's Motion to Strike the Class Allegations from the Action*

Less than two months after the trial court ruled on the summary judgment motion, GEICO filed a motion to strike the class allegations from the operative complaint. GEICO pointed out that despite the pending April 15, 2009 deadline for all fact discovery and the May 15, 2009 trial date, Wallace

had not located a substitute class representative, and that a class action could not proceed without a class representative. It also argued that the absence of a class representative had prevented it from conducting discovery on the issues of typicality and numerosity to defend an eventual class certification motion.

Wallace opposed the motion on the basis, among others, (1) that because of GEICO's alleged noncompliance with discovery requests, she had "encountered difficulties locating a new class member"; and (2) that case law prohibits a defendant from defeating a class action by compensating the representative plaintiff for her injuries after the filing of the complaint. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113] (*La Sala*).)

On April 17, 2009, the trial court issued a ruling granting the motion to strike the class allegations on the ground that, despite the passing of the April 15 fact discovery deadline, "the class has no designated class representative and a class action cannot be prosecuted in the absence of a class representative." The trial court rejected Wallace's reliance on *La Sala, supra*, 5 Cal.3d 864, holding that it did not apply to claims brought under section 17200 et seq. The trial court also noted, "The case is twenty (20) months old . . . yet [Wallace] has failed to bring a motion to certify a class."

The trial court gave Wallace the option of proceeding with her individual claims, which she elected to do, and the trial court then stayed the action pending Wallace's appeal of the order striking the class allegations.[5]

## II

## DISCUSSION

Wallace's sole argument on appeal is that the trial court erred in ruling that she lacked standing to proceed as the representative plaintiff. Wallace contends that she should be permitted to act as a representative plaintiff under the doctrine described in *La Sala, supra*, 5 Cal.3d 864, and other cases, under

---

[5] An order striking class allegations is immediately appealable under the death knell doctrine established in *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], under which an order that "determines the legal insufficiency of the complaint as a class suit and preserves for the plaintiff alone his cause of action for damages" has a " 'legal effect' . . . tantamount to a dismissal of the action as to all members of the class other than plaintiff." (*Id.* at p. 699, citation omitted.) We may also review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the . . . order appealed from." (Code Civ. Proc., § 906.) Thus, the ruling that Wallace lacks standing to serve as a class representative is also within the scope of our review, as that ruling impacted the trial court's decision to strike the class allegations.

which a defendant in a class action is not permitted to avoid a class suit by "picking off" the representative plaintiffs and remedying the injuries they suffered. According to Wallace, if she is allowed to serve as a representative plaintiff, then there is no basis for striking the class allegations. However, before we turn to that issue, we must address a preliminary point raised in GEICO's respondent's brief.

## A. The Trial Court's Order Striking Class Allegations Was Not Based on the Independent Ground That Wallace Had Failed to Move for Class Certification

GEICO contends that the trial court's order striking the class allegations rested on two independent grounds: (1) that the case lacked a representative plaintiff; and (2) that Wallace had not moved for class certification despite the fact that the case had been pending for 20 months. GEICO contends that we may thus affirm the order striking the class allegations by relying on the second ground for the trial court's decision, without even reaching the issue of whether Wallace lacks standing to act as the representative plaintiff.

As we will explain, we reject this argument because we do not share GEICO's interpretation of the trial court's decision. More specifically, we conclude that the trial court did not base its decision to strike the class allegations on the ground that Wallace had not moved for class certification.

First, the trial court's order does not state that the failure to move for class certification was a ground for its decision. Instead, the ruling clearly states that the motion is granted because "the class has no designated class representative." The trial court mentions the fact that Wallace "has failed to bring a motion to certify a class," but the analytical significance of that statement is not clear, and the trial court does not state that the lack of such a motion forms an independent basis for its decision.

Second, GEICO's motion to strike the class allegations did not assert Wallace's failure to move for class certification as a ground for striking the class allegations. Thus, it is illogical that the trial court would rely on that ground in granting the motion.[6]

---

[6] Further, there is some significance to the fact that on April 10, 2009, just seven days before the ruling on the motion to strike class allegations, the trial court ruled on the parties' discovery disputes and explained that "[i]n the event the court denies the motion to strike the class allegations, the court will set a firm hearing date for a motion to certify the case as a class action." This statement implies that the trial court did not view the timeline of the case to preclude a motion for class certification, and thus makes it less likely that the trial court would have granted the motion to strike on the ground that Wallace had not yet moved for class certification.

In sum, we will not affirm the ruling striking the class allegations by relying on the independent ground that Wallace failed to move for class certification, as we do not understand the trial court to have based its ruling on that ground.

## B. *The Trial Court Erred in Granting the Motion to Strike the Class Allegations*

We now turn to the issue of whether, as a predicate to its order striking the class allegations, the trial court erred in ruling that due to GEICO's offer to compensate her for her injury, Wallace lost her standing to act as a representative plaintiff.

### 1. *Standard of Review*

We apply a de novo standard of review to an order striking class allegation (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 54 [27 Cal.Rptr.3d 877]), and to the extent we are required to consider the portion of the trial court's summary judgment ruling that Wallace lacks standing to serve as class representative, we also apply a de novo standard of review. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017 [90 Cal.Rptr.3d 1, 201 P.3d 1147] [a decision granting summary judgment is reviewed de novo]; *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656] ["Standing is a question of law that we review de novo."].)

### 2. *The "Pick Off" Cases*

██ We begin with the " 'elementary' " principle " 'that the named plaintiff in a class action must be a member of the class he purports to represent.' " (*First American Title Ins. Co. v. Superior Court* (2007) 146 Cal.App.4th 1564, 1573–1574 [53 Cal.Rptr.3d 734].) GEICO argued that Wallace was no longer a member of the class she sought to represent because her injuries had been remedied by GEICO's tender of payment in the amount of $387.56. The trial court agreed, and on that basis ruled that Wallace was no longer a proper class representative and eventually struck the class allegations from the action.

In the specific situation where a defendant in a class action has forced an involuntary settlement on the representative plaintiff after the lawsuit is filed, case law creates an exception to the requirement that a representative plaintiff continue to be a member of the proposed class. These cases, which are "sometimes referred to as 'pick off ' cases" (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1590 [92 Cal.Rptr.3d 409]), "arise when, prior to class

certification, a defendant in a proposed class action gives the named plaintiff the entirety of the relief claimed by that individual. The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent. . . . [T]he defendant seeks to avoid exposure to the class action by 'picking off' the named plaintiff, sometimes by picking off named plaintiffs serially." (*Ibid.*, citing, among others, *La Sala, supra*, 5 Cal.3d 864, fn. omitted.) In this situation, "the involuntary receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class representative." (*Watkins*, at p. 1590; see also *Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291, 1299 [86 Cal.Rptr.3d 324] [case law "prevents a prospective defendant from avoiding a class action by 'picking off' prospective class action plaintiffs one by one, settling each individual claim in an attempt to disqualify the named plaintiff as a class representative"]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 548 [72 Cal.Rptr.3d 888] [" '[A] prospective defendant is not allowed to avert a class action by "picking off" prospective plaintiffs one-by-one. Thus, precertification payment of the named plaintiff's claim does not automatically disqualify the named plaintiff as a class action representative.' "].)

Federal case law also disapproves of attempting to moot a class action by picking off a representative plaintiff. (*Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 339 [63 L.Ed.2d 427, 100 S.Ct. 1166] [appeal of class certification ruling was justiciable even though defendant afforded relief to the representative plaintiff]; *Weiss v. Regal Collections* (3d Cir. 2004) 385 F.3d 337, 348 (*Weiss*) [where the defendant attempted to pick off the representative plaintiff in a proposed class action through an offer of judgment before the filing of a certification motion, the representative plaintiff would be permitted to proceed with the action and file a certification motion].)[7]

█ Instead of a reflexive dismissal of the representative plaintiff on the basis that he or she lacks standing as the trial court did here—the proper procedure in a pickoff situation is for the trial court to consider whether "the named plaintiffs will continue fairly to represent the class" in light of the individual relief offered by the defendant. (*La Sala, supra*, 5 Cal.3d at p. 872.) As a practical matter, in most cases, that evaluation may be performed in the context of a ruling on a motion for class certification, where the trial court inquires into the existence of, among other things, "(1) predominant common questions of law or fact; (2) class representatives with claims

---

[7] In the context of class action procedure, federal authorities are instructive to the extent that California authorities do not provide guidance, as it "is well established that in the absence of relevant state precedents our trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure for conducting class actions." (*Green v. Obledo* (1981) 29 Cal.3d 126, 145–146 [172 Cal.Rptr. 206, 624 P.2d 256].)

or defenses typical of the class; and (3) *class representatives who can adequately represent the class.*" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194], italics added; see also *Weiss, supra,* 385 F.3d at p. 348 [allowing class certification motion to be filed after defendant attempted to pick off the representative plaintiff].)[8]

### 3. *The Pickoff Cases Apply to a Class Action Alleging a Violation of Section 17200 et seq.*

Before we consider whether GEICO's offer of settlement to Wallace falls into the situation described in the pickoff cases, we first consider whether the pickoff cases are applicable in a class action alleging violations of section 17200 et seq. In its ruling striking the class allegations, the trial court rejected Wallace's citation to *La Sala, supra,* 5 Cal.3d 864, and the rule expressed in the pickoff cases. It explained that "[t]he *La Sala* case relied on by [Wallace] is not persuasive in this setting, in light of the requirement under section 17200 that the plaintiff must have actually suffered injury." The trial court was apparently referring to section 17204, as amended by Proposition 64 in November 2004 (see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207] (*Californians for Disability Rights*)), which states that "[a]ctions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.)[9] In Wallace's opening appellate brief, she argues that the trial court erred in concluding that, because of the injury-in-fact requirement, the pickoff cases are not persuasive here. Specifically, Wallace argues that applying the pickoff cases to a class action complaint brought under section

---

[8] More specifically, "[c]lass certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268] (*Fireside Bank*).)

[9] "The unfair competition law prohibits 'any unlawful, unfair or fraudulent business act or practice . . . .' (§ 17200.) Before 2004, any person could assert representative claims under the unfair competition law to obtain restitution or injunctive relief against unfair or unlawful business practices. Such claims did not have to be brought as a class action, and a plaintiff had standing to sue even without having personally suffered any injury." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 977 [95 Cal.Rptr.3d 588, 209 P.3d 923].) As relevant here, in addition to amending section 17204 to add the injury-in-fact requirement, Proposition 64 also amended section 17203 to provide that "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure," which governs representative actions. (§ 17203; see *Arias,* at pp. 977–978, fn. 3.)

17200 et seq. does not conflict with the injury-in-fact requirement, as the pickoff cases presuppose an injury in fact at the time the lawsuit is filed. In its respondent's brief, GEICO agrees with Wallace, stating it "does not . . . contend that Proposition 64 created any exception to the rule announced in the pick off cases." Instead, GEICO argues that we should affirm the trial court's order striking the class allegations because GEICO did not attempt to pick off Wallace as the representative plaintiff, but instead compensated her under the terms of the consent order.

We agree with the parties that the pickoff cases are persuasive here, regardless of the injury-in-fact requirement set forth in section 17204. As required by section 17204, Wallace "suffered injury in fact" and "lost money or property" as a result of the practices at issue in this lawsuit. (§ 17204.) Specifically, Wallace was injured by paying for the repair work to her vehicle that GEICO did not agree to cover. Thus, at the time Wallace filed suit she was a proper plaintiff under section 17204. We see no indication in the history of Proposition 64, as reviewed by our Supreme Court in *Californians for Disability Rights, supra,* 39 Cal.4th 223, 228, that the voters amended section 17204 with the intent of allowing defendants in class actions brought under section 17200 et seq. to defeat class status by forcing an involuntary settlement.[10] Our Supreme Court explained the voter's intent: "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the [unfair competition law]'s broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses . . . .' (Prop. 64, § 1, subd. (c) ['Findings and Declarations of Purpose'].) The former law, the voters determined, had been 'misused by some private attorneys who' '[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.' (Prop. 64, § 1, subd. (b)(1)–(4).) '[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' (*id.*, § 1, subd. (e)) and by providing 'that only the California Attorney General and local public

---

[10] Because section 17204, as amended by Proposition 64, is ambiguous as to whether it precludes application of the pickoff cases, we may rely on evidence of the electorate's intent in adopting Proposition 64. (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27] ["When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' "].)

officials be authorized to file and prosecute actions on behalf of the general public' (*id.*, § 1, subd. (f))." (*Californians for Disability Rights, supra*, 39 Cal.4th at p. 228.)

■ We see no indication in this statement of intent that Proposition 64 was intended to render the pickoff cases inapplicable in class actions brought under section 17200 et seq. The voter's focus was instead on the *filing* of lawsuits by attorneys who did not have clients impacted by the defendant's conduct. Here, Wallace's lawsuit was filed by a client directly impacted by GEICO's conduct. Further, as our Supreme Court stated in another case in which it reviewed evidence of the voter's intent, the ballot materials for Proposition 64 contain no "indication that the purpose of the initiative was to alter the way in which class actions operate in the context of the [unfair competition law]" and there is no "indication that Proposition 64 was intended in any way to alter the rules surrounding class action certification." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 318 [93 Cal.Rptr.3d 559, 207 P.3d 20].) Because the doctrine expressed in the pickoff cases is an established part of class action procedure, there is no reason to believe that Proposition 64 was intended to alter that doctrine in the context of suits brought under section 17200 et seq.

4.  *Because the Pickoff Cases Apply Here, the Trial Court Erred in Concluding That Wallace Lacked Standing to Serve As the Representative Plaintiff*

We now consider Wallace's contention that, in light of the pickoff cases, the trial court erred in ruling that GEICO's offer of settlement caused her to lose standing to pursue her class allegations as a representative plaintiff.

GEICO contends that this case does not fall into the situation described in the pickoff cases because GEICO was not affording special treatment to Wallace by offering to pay her the amount that she paid to the repair shop out of her own pocket. GEICO argues that, instead, it "paid her claim pursuant to a preexisting DOI order [i.e., the consent order] that provides the same relief to both Wallace and any other potential class member" and that the consent order "was entered . . . two months *before* Wallace filed this lawsuit." GEICO contends that by entering into the consent order, it effectively agreed to compensate Wallace *before* she filed the lawsuit, and thus it did not as a factual matter engage in the conduct described in the pickoff cases, namely offering individual compensation to a representative plaintiff after the filing of a lawsuit. Moreover, characterizing the consent order as an agreement to "reimburse all individuals—not just Wallace—who paid additional money to a body shop because GEICO had refused to pay that body shop's labor rates," GEICO argues that the policy behind the pickoff cases is not implicated here

in that "[t]here is simply no risk that GEICO's agreement to class-wide relief and its reimbursement to Wallace could possibly 'frustrate the objectives of class actions,' 'invite waste of judicial resources,' . . . stimulat[e] successive suits' " or "open a 'revolving door' of litigation."

We reject GEICO's arguments because they rest on a flawed understanding of the consent order. As we have described, the consent order required GEICO to make payment only to a limited group of individuals. Specifically, GEICO was required to conduct an internal audit of relevant complaints submitted to it since January 1, 2004, and, within 90 days of the approval of the consent order, to reimburse *the insured or claimants who made those complaints*. Further, to the extent GEICO received additional complaints in the 60-day period after the approval of the consent order, GEICO was required to reimburse those insureds or claimants who made those complaints. Here, it is undisputed that Wallace did not make a complaint to GEICO prior to filing this lawsuit on August 7, 2007. This lawsuit was filed more than 60 days after the consent order was approved on May 2, 2007. Accordingly, Wallace does not fall within the scope of persons whom GEICO is required to reimburse under the terms of the consent order. Further, there may be other persons in the proposed class who, like Wallace, did not make a complaint to GEICO within the required timeframe and thus are entitled to reimbursement under the terms of the consent order.[11]

█ Under these circumstances, we find the pickoff cases to be fully applicable. Because GEICO was not required to reimburse Wallace under the terms of the consent order, it *voluntarily* offered to settle with her *after* she filed a class action lawsuit. The pickoff cases establish that in such a situation, Wallace does not automatically lose standing to act as a representative plaintiff. It was thus error for the trial court to grant GEICO's motion to strike class allegations on the ground that the lawsuit lacked a representative plaintiff.

As the trial court erred in granting the motion to strike the class allegations, we will remand the action for further class action proceedings, during which the trial court should take into account the fact of GEICO's settlement offer when deciding, in connection with class certification, whether Wallace will adequately represent the class. (*La Sala, supra,* 5 Cal.3d at p. 872.)

---

[11] GEICO contends that "there is no class for Wallace to represent" due to the compensation provided by GEICO to possible class members under the terms of the consent order. The factual basis for this argument is suspect in light of the limited scope of persons required to be reimbursed under the consent order. The issue should, in any event, be raised in the context of a class certification motion when the trial court considers whether a class action is superior to proceeding through individual lawsuits. (*Fireside Bank, supra,* 40 Cal.4th at p. 1089 [class certification factors include whether there is a "sufficiently numerous, ascertainable class" and whether "proceeding as a class is superior to other methods"].)

## DISPOSITION

The order striking class allegations is reversed, and the matter is remanded for proceedings consistent with this opinion. Wallace shall recover her costs on appeal.

Huffman, Acting P. J., and Aaron, J., concurred.