Filed 6/21/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LISA ARLENE TIMLICK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NATIONAL ENTERPRISE SYSTEMS, INC.,<br><br>    Defendant and Respondent. | A154235<br><br>(Lake County<br>Super. Ct. No. CV-416920)<br><br>**ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

It is hereby ordered that the opinion ordered published on May 23, 2019, be modified as follows:

On page 3, in the third full paragraph, line 8, replace the words "that statute" with "the Consumer Collection Notice law" so that the sentence reads: "In any case, Timlick contends, NES's type-size violation is not one that is capable of being cured within the meaning of section 1788.30(d) because the Consumer Collection Notice law necessarily requires compliance in the debt collector's *first* written communication to the consumer debtor."

There is no change in the judgment.


Dated:    June 21, 2019                                             SIGGINS, PJ                , P.J.


1

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LISA ARLENE TIMLICK,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>NATIONAL ENTERPRISE SYSTEMS, INC.,<br><br>  Defendant and Respondent. | A154235<br><br>(Lake County<br>Super. Ct. No. CV-416920) |

  In this appeal from the dismissal of a putative consumer class action, we are presented with two main questions.  First, can a debt collector that violates the minimum type-size requirement for consumer collection letters under Civil Code sections 1812.700 to 1812.702[1] utilize the procedure for curing violations under the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act; § 1788 et seq.) to correct its violation?  Second, after the trial court in this case found there was no triable issue of material fact that the defendant debt collector timely cured the type-size violation as to the named plaintiff, did the court err by dismissing the entire putative class action?

  Our answer to each of the foregoing questions is yes.  The Rosenthal Act's cure provision set forth in section 1788.30, subdivision (d) (hereafter section 1788.30(d)), is available to debt collectors to correct curable violations of the Consumer Collection

---

[1]  Unless otherwise indicated, all further statutory references are to the Civil Code. For purposes of this opinion, we will refer to sections 1812.700 to 1812.702 collectively as the Consumer Collection Notice law.

Notice law. However, the trial court erred by dismissing the entire putative class action, as this allowed the debt collector to unilaterally "pick off" the named plaintiff and avoid class action litigation. Accordingly, we reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The operative class action complaint filed by Lisa Arlene Timlick alleges as follows. After defaulting on a loan, Timlick received a collection letter dated January 13, 2016, from third-party debt collector National Enterprise Systems, Inc. (NES). This was the first written communication from NES to Timlick regarding the subject debt. The letter did not comply with section 1812.701, subdivision (b) (hereafter section 1812.701(b)) of the Consumer Collection Notice law because certain statutorily-required language was not in a type-size that was at least the same as used to inform Timlick of the debt, or 12-point type. Timlick pleaded a single cause of action against NES for violation of section 1812.701(b) and sought to recover statutory damages, costs, and attorney's fees. She also sought to represent a class of persons in California who received an initial written communication from NES in an attempt to collect on a consumer debt during the one-year period prior to the complaint's filing date.

NES moved for summary judgment on the basis that it cured the alleged violation within the 15-day period prescribed by section 1788.30(d) for correcting curable Rosenthal Act violations. NES submitted evidence that on January 13, 2017, nine days after it was served with Timlick's complaint, NES sent a letter to Timlick, in care of her counsel of record, enclosing a revised collection letter which set forth the required language in the same type-size as that which was used to inform her of her specific debt.

In opposition to the motion, Timlick did not dispute NES's evidence or material facts. Rather, she argued section 1788.30(d) should not apply for various reasons: (1) it was implicitly repealed by a subsequently-enacted statute; (2) it applied only to violations under a different title of the Civil Code that did not contain the statute violated by NES; (3) NES's violation was not capable of being cured within the meaning of section

2

1788.30(d); and (4) NES's revised collection letter did not provide redress to the putative class but merely served to eliminate Timlick's standing to act as named plaintiff.

The trial court found that section 1788.30(d) applied to NES's section 1812.701(b) violation, and that NES timely cured the violation by sending the revised collection letter. The trial court granted NES's motion for summary judgment and dismissed the complaint with prejudice. Timlick timely appealed.

## DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We also conduct independent review of the trial court's determination of questions of law. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083.)

Timlick argues section 1788.30(d) and its cure provision were repealed when the Legislature enacted section 1788.17 to harmonize the Rosenthal Act with the federal Fair Debt Collection Practices Act (FDCPA; 15 U.S.C. § 1692 et seq.). Alternatively, Timlick argues that the cure provision applies only to violations under the title in which it is codified (title 1.6C) and that it has no application to NES's section 1812.701(b) violation, which falls under a different title (title 2.97). In any case, Timlick contends, NES's type-size violation is not one that is capable of being cured within the meaning of section 1788.30(d) because that statute necessarily requires compliance in the debt collector's *first* written communication to the consumer debtor.[2]

As for the trial court's decision to dismiss the entire putative class action after granting summary judgment on Timlick's individual claim, Timlick argues this was error under the so-called "pick off exception," which is an exception to the general rule that a

---

[2]  Timlick also argues NES did not satisfy section 1788.30(d), because it sent the notice of violation and revised collection letter to Timlick's attorney, not the "debtor" as required by the statute. We conclude Timlick forfeited this argument by not raising it below.

3

named plaintiff in a class action must be a member of the class she seeks to represent. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 (*La Sala*).) Timlick argues that under this exception, she did not automatically lose her standing to represent the class, and that the trial court should have given her the opportunity to amend her complaint, or redefine the class, or find a new class representative.

## A. The Law Governing Debt Collection Practices

We begin our discussion with an overview of the relevant law.

Debt collection practices in California are governed by state and federal law. California's Rosenthal Act is codified at title 1.6C (commencing with section 1788) of part 4 of division 3 of the Civil Code. The FDCPA is codified at 15 United States Code section 1692 et seq. Both the Rosenthal Act and the FDCPA were enacted in 1977. (*Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 295.)

Section 1788.30 of the Rosenthal Act provides for actual damages to injured debtors (§ 1788.30, subd. (a)), penalties against debt collectors for willful and knowing violations (*id.*, subd. (b)), and costs and reasonable attorney's fees to the prevailing party in a Rosenthal Act suit (*id.*, subd. (c)). Subdivision (d) of section 1788.30, which contains the cure provision at issue, provides: "A debt collector shall have no civil liability under this title if, within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor."

As originally enacted, the Rosenthal Act did not permit class actions. (Accord, *Gonzales v. Arrow Fin. Servs., LLC* (9th Cir. 2011) 660 F.3d 1055, 1065 (*Gonzalez*).) Indeed, to this day, section 1788.30 of the Rosenthal Act states that violators are liable to debtors "only in an individual action" or "in an individual capacity only." (§ 1788.30, subds. (a), (b), (f), added by Stats. 1977, ch. 907, § 1.)

In 1999, however, the Legislature passed Assembly Bill No. 969, which added section 1788.17 to the Rosenthal Act. (Stats. 1999, ch. 319, § 2.) Section 1788.17 provides in relevant part: "Notwithstanding any other provision of this title, every debt

4

collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."[3]

Section 1692k of the FDCPA specifically provides for both individual and *class action* remedies. It states in relevant part: "[A]ny debt collector who fails to comply with any provision of this title [15 U.S.C. § 1692 et seq.] with respect to any person is liable to such person in an amount equal to the sum of—[¶] (1) any actual damage sustained by such person as a result of such failure; [¶] (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or [¶] (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." (15 U.S.C. § 1692k(a)(1), (2)(B).)

Then in 2003, the Legislature enacted the Consumer Collection Notice law, codified at title 2.97 of part 4 of division 3 of the Civil Code (§§ 1812.700–1812.702, added by Stats. 2003, ch. 259, § 1 (Sen. Bill No. 1022)). Under section 1812.700, subdivision (a), third-party debt collectors subject to the FDCPA must, in their first written notice to debtors, provide a "description of debtor rights" under state and federal

---

[3] We briefly summarize the federal provisions incorporated by reference in section 1788.17. Sections 1692b and 1692c of the FDCPA regulate how debt collectors communicate with third persons and the debtor, respectively. Sections 1692d, 1692e, and 1692f of the FDCPA prohibit harassment, abuse, and the use of false, deceptive, or misleading representations and unfair or unconscionable means in the collection of a debt. Section 1692g of the FDCPA governs the validation of debts and the content of the written notice that a debt collector must give to the debtor. Section 1692h of the FDCPA dictates how a single payment from a debtor with multiple debts must be applied. Section 1692i of the FDCPA is a venue provision. Section 1692j of the FDCPA prohibits the design, compilation, and furnishing of deceptive forms in the collection of the debt.

5

law.[4]  If the third-party debt collector later discovers that the debtor does not speak English and uses another language to communicate verbally in follow-up contacts, a supplemental written notice in that language must be sent to the debtor within five working days.  (§ 1812.700, subd. (c).)  And as relevant in this case, "[t]he type-size used in the disclosure shall be at least the same type-size as that used to inform the debtor of his or her specific debt, but is not required to be larger than 12-point type." (§ 1812.701(b).)  Section 1812.702 explicitly states that "[a]ny violation of this act shall be considered a violation of the Rosenthal Fair Debt Collection Practices Act (Title 1.6C (commencing with Section 1788))."

### B.  Civil Code Section 1788.30(d)

We first address Timlick's argument that the enactment of section 1788.17— which requires debt collectors to comply with listed provisions of the FDCPA and subjects them to the remedies in section 1692k of that federal act—effectuated a repeal of section 1788.30(d) and its cure provision.  Our first step in this analysis " 'is to scrutinize the actual words of the statute[s], giving them a plain and commonsense meaning.' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 (*Garcia*).)  Because section 1788.18 contains no express repeal language, the issue is whether it accomplishes a repeal by implication.  " '[A]ll presumptions are against a repeal by implication,' " and an implied repeal will be found " 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Id.* at pp. 476–477.)

As both parties recognize, the Ninth Circuit Court of Appeals addressed this very issue in *Afewerki v. Anaya Law Group* (9th Cir. 2017) 868 F.3d 771 (*Afewerki*), holding that section 1788.17 did not remove or delete section 1788.30's defense for cured

---

[4]     In the required description, the debt collector must disclose that it may not contact the debtor before 8 a.m. or after 9 p.m., subject the debtor to harassing threats, obscene language, and false or misleading statements, call the debtor at work if the collector has reason to know personal calls are not permitted, or tell another person other than the debtor's attorney or spouse about the debt.  (§ 1812.700, subd. (a).)

6

violations. In so holding, the court relied on the unambiguous language of section 1788.17, which "makes debt collectors 'subject to the *remedies* in Section 1692k' but says nothing about *defenses*," such as the cured violation defense provided in section 1788.30(d). (*Afewerki*, at p. 778 italics added.) The court then recalled a previous decision in which it concluded that section 1788.17 did not delete section 1788.30(d), even though it "nullified" some of section 1788.30's limitations on remedies to the extent such limitations did not apply to the remedies described in section 1692k of the FDCPA. (*Id*. at p. 779, identifying *Gonzales*, *supra*, 660 F.3d at p. 1065.)

We generally agree with *Afewerki* that nothing in the text of section 1788.17 indicates a legislative intent to repeal section 1788.30(d).[5] Although section 1788.17 applies "[n]otwithstanding any other provision" of the Rosenthal Act, the mere incorporation of certain provisions from the FDCPA—none of which says anything about curing violations—does not render sections 1788.17 and 1788.30(d) " ' "so inconsistent that the two cannot have concurrent operation." ' " (*Garcia*, *supra*, 16 Cal.4th at pp. 476–477.) The Legislature could rationally have intended to broaden the remedies available to debtors in Rosenthal Act suits while also maintaining the ability of debt collectors to promptly correct curable violations.

We also find nothing in the legislative history of section 1788.17 indicating an intent to repeal section 1788.30(d). According to an analysis of the Senate Rules Committee, section 1788.17's underlying purposes were to: adopt sections 1692b through 1692j of the FDCPA; exclude certain officers or employees from the

---

5       We express no opinion on *Afewerki*'s additional holding that a debt collector who corrected prior incorrect statements regarding the principal due and the applicable interest rate was entitled to summary judgment based on section 1788.30(d). (*Afewerki*, *supra*, 868 F.3d at pp. 777–779.) It appears the only argument raised by the debtor on this issue was that section 1788.17 was eliminated by section 1788.30(d). We note that in other contexts, misrepresentations regarding the principal due and the applicable interest rate may constitute violations that are not "able to be cured" within the meaning of section 1788.30(d). (See *Romero v. Dep't Stores Nat'l Bank* (9th Cir. 2018) 725 Fed. Appx. 537, 539–540 (*Romero*) [section 1788.30(d) does not apply if creditor cannot undo the harm to a debtor].)

requirements relating to initial disclosures and validation of debts; specify that the available remedies include actual damages and up to a $1,000 penalty for individual violations, and actual damages and up to $500,000 or one percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiffs for class actions; and drop the name "Robbins" from the statutory title. (Senate Rules Com., Off. of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 969 (1999-2000 Reg. Sess.) Jul. 15, 1999, pp. 1-2.) There is no mention of repealing section 1788.30(d) in the legislative history.

Timlick seeks to buttress her position by highlighting certain statements in the legislative history raising concerns that debt collectors lack incentive to comply with the law given their ability to cure violations. (Senate Rules Com., Off. of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 969, *supra*, p. 4 ["The area of current law which is of most concern to the proponents of this legislation is the ability for violators to escape liability if they cure the impact of their illegal practice. . . . If any practice is complained of, all a company must do is stop calling, writing, harassing that person, and they are safe from punishment."].) But these statements fall far short of evincing an express intent to repeal section 1788.30(d). (*Garcia*, *supra*, 16 Cal.4th at p. 477.) As we discuss below, the Legislature's response to the lack-of-incentive problem was to expand the remedies available to debtors to include class action remedies, not to do away with the cure provision altogether.

The notion of repeal is further undermined by comments of the Senate Rules Committee in its 2003 analysis of Senate Bill No. 1022—the bill that enacted the Consumer Collection Notice law. "This bill requires that the notice be printed in at least the same size font as the debt information, but need not be larger than 12-point type and declares any violation of this act as a violation of the Rosenthal Fair Debt Collection Practices Act, *which generally allows for a 15-day correction period.*" (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1022 (2003-2004 Reg. Sess.), Jul. 17, 2003, p. 2, italics added.) The Assembly similarly stated in its analysis that "[f]ailure to provide the notice can be punished by existing state law,

*which provides for a 15-day correction period.*" (Assem. Floor Analysis, Sen. Bill No. 1022, (2003-2004 Reg. Sess.), Jul. 17, 2003, p. 2, italics added.) While, strictly speaking, the legislative history of the Consumer Collection Notice law has no bearing in discerning the legislative intent of section 1788.17, these statements cannot reasonably be reconciled with Timlick's assertion that the 1999 enactment of section 1788.17 repealed section 1788.30(d).

Timlick also contends that NES's violation of section 1812.701 was not "a violation which is able to be cured" within the meaning of section 1788.30(d). We disagree. The aforementioned statements in the floor analyses of Senate Bill No. 1022 demonstrate that a violation of the type-size requirement was intended to be a Rosenthal Act violation subject to the 15-day correction period. It necessarily follows that the violation is "able to be cured" despite the correction being made in a writing subsequent to the first written communication to the debtor.[6]

Finally, we reject Timlick's contention that section 1788.30(d) does not apply to a violation of a statutory provision contained in title 2.97. True, the cure provision pertains to liability under "this title" (title 1.6C). But title 2.97 makes clear that a violation of section 1812.701(b)'s type-size requirement "shall be considered a violation of the [Rosenthal Act] (Title 1.6C)." (§ 1812.702.)

In sum, we conclude the cure provision of section 1788.30(d) was available to NES to cure its violation of section 1812.701(b)'s type-size requirement.

**C. The Pick Off Exception in Putative Class Actions**

We now turn to Timlick's argument that the trial court erred in dismissing the entire putative class action because it allowed NES to pick her off as the named plaintiff in order to avoid a class action.

---

[6]     This assumes the violation has not caused other harms which cannot be undone by the debt collector's prompt issuance of a corrected letter. (See *Romero*, *supra*, 725 Fed. Appx. at pp. 539–540.) Here, Timlick did not allege or submit evidence that she suffered any such harm from NES's type-size violation.

### 1. *Class Actions Under the Rosenthal Act*

As a threshold matter, NES argues we need not reach the pick off issue because section 1788.30 contains "individual action" language that, as a matter of law, bars Timlick's efforts to bring a class action based on alleged violations of section 1812.701(b).[7] Resolving this contention is a matter of statutory construction, subject to our independent review.

To reiterate, the Rosenthal Act, as originally enacted in 1977, did not allow class actions. Even now, section 1788.30 of the act states that violators are liable to debtors "only in an individual action" or "in an individual capacity only." (§ 1788.30, subds. (a), (b), (f).) In 1999, however, section 1788.17 was added to the Rosenthal Act, providing in pertinent part: "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." As already mentioned in part A., *ante*, section 1692k of the FDCPA specifically provides for both individual and *class action* remedies.

Our first step in this analysis " 'is to scrutinize the actual words of the statute[s], giving them a plain and commonsense meaning.' " (*Garcia*, *supra*, 16 Cal.4th at p. 476.) When a statute employs the phrase "[n]otwithstanding any other provision of law," it is generally acknowledged that its "broad and unambiguous scope" operates to override[] the application, if any, of [contradictory law]." (*People v. Palacios* (2007) 41 Cal.4th 720, 729.) Thus, section 1788.17 may be reasonably read to incorporate the class action remedies of the FDCPA into the Rosenthal Act, "[n]otwithstanding any other provision" of the act, such as the individual action provisions in section 1788.30. Indeed, several federal courts faced with this very question have concluded that "class actions may

---

[7] Timlick argues NES should not be permitted to raise this argument for the first time on appeal, but we have discretion to consider new arguments on appeal raising pure questions of law. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.) We see no due process concerns given that Timlick had (and took) the opportunity to fully address this issue on the merits in her reply brief on appeal.

proceed under the amendment to the Rosenthal Act, notwithstanding the contradictory 'individual action' language in § 1788.30." (*Gonzales*, *supra*, 660 F.3d at p. 1066, citing *Palmer v. Stassinos* (N.D. Cal. 2006) 233 F.R.D. 546, 548; *McDonald v. Bonded Collectors, LLC* (S.D. Cal. 2005) 233 F.R.D. 576, 577; *Abels v. JBC Legal Grp, P.C.* (N.D. Cal. 2005) 227 F.R.D. 541, 548; see *Afewerki*, *supra*, 868 F.3d at p. 779 [§ 1788.17 nullified § 1788.30's limitations on remedies to the extent they did not apply to remedies in § 1692k of the FDCPA].)

NES concedes that section 1788.17 allows for class action remedies in *some* Rosenthal Act suits, but argues they are limited to claims alleging violations of the FDCPA. According to NES, the plain language of section 1788.17 is clear and unambiguous that the Legislature intended section 1788.17 to act as an enabling statute for California plaintiffs to enforce FDCPA violations. NES reasons that section 1788.17 incorporates all of section 1692k of the FDCPA into the Rosenthal Act, and section 1692k of the FDCPA establishes civil liability only for a debt collector who "fails to comply with any provision of *this title* [15 USCS § 1692 et seq.]." (15 U.S.C. § 1692k(a), italics added.) In NES's view, the incorporation of this liability language limits the availability of class action remedies to state lawsuits alleging "fail[ure] to comply with" provisions of the FDCPA and does not extend such remedies to violations of the Rosenthal Act that lack a federal counterpart.

We conclude the statutory language of section 1788.17 does not purport to limit the incorporated FDCPA remedies to FDCPA violations. Section 1788.17 broadly states that, "[n]otwithstanding any other provision" of the Rosenthal Act, "every debt collector collecting or attempting to collect a consumer debt . . . shall be subject to the remedies in Section 1692k." It does not say or otherwise imply that debt collectors are subject to the remedies in section 1692k of the FDCPA only if they violate the provisions of sections 1692b to 1692j. Nor does the statutory language make any distinction among the types of claims for which class action remedies would be available in state Rosenthal Act suits. And contrary to NES's contention, section 1788.17 does not incorporate the entirety of section 1692k of the FDCPA into the Rosenthal Act. Had the Legislature intended that

11

result, it could logically have drafted section 1788.17 to state that debt collectors are subject to sections 1692b to 1692k of the FDCPA, or that collectors shall be subject to section 1692k. Instead, section 1788.17 focuses on "the *remedies* in Section 1692k" of the FDCPA and subjects every debt collector collecting or attempting to collect a consumer debt to *those remedies*. Read thusly, section 1788.17 does not incorporate the liability language for violators of "this title" in section 1692k(a) of the FDCPA as a limitation on the availability of class action remedies in Rosenthal Act suits.

Assuming—generously—that NES's alternative reading of section 1788.17 finds reasonable support in the statutory language, we turn to the legislative history to facilitate our interpretive analysis. (*California Building Industry Association v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1041.) In their analyses of Assembly Bill No. 969, the Senate Rules Committee and Assembly Committee on Banking and Finance noted that under then-existing law, class actions were unavailable for unfair debt collection activities and the lack of a class action remedy was a key reason why debt collectors lacked incentive to comply with the law. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 969, *supra*, pp. 2, 6; Assem. Com. on Banking and Finance, 3d reading analysis of Assem. Bill No. 969 (1999-2000 Reg. Sess.) May 18, 1999, p. 2.) The Senate Rules Committee and Senate Judiciary Committee elaborated: "In the event a group of persons is affected, the culprit can still escape liability for all harm caused to consumers, unless each and every consumer brings a complaint. This is highly unlikely, a fact those engaged in improper debt collection practices can bank on." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 969, *supra*, at p. 4; Sen. Jud. Com., Assem. Bill No. 969 (1999-2000 Reg. Sess.) as amended May 18, 1999, p. 5.) Thus, the bill's author proposed adoption of section 1788.17 because, "absent the threat of a class action, there is no incentive to abort an illegal continuing course of conduct.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 969, *supra*, p. 6; Sen. Jud. Com., Assem. Bill No. 969, *supra*, p. 4.) The Senate Rules Committee and Senate Judiciary Committee went on to note another significant reason to adopt section 1788.17.

As their analyses observed, the Attorney General's Office sponsored the bill " 'to harmonize state and federal law by applying federal debt collection standards and remedies to all parties defined as debt collectors under California law." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 969, *supra*, p. 7; Sen. Jud. Com., Assem. Bill No. 969, *supra*, p. 4.)

Fairly read, the legislative history highlights the Legislature's concern that debt collectors lacked the incentive to preemptively comply with the debt collection laws, particularly as to large groups of consumers, because the debt collectors could simply "bank" on the unlikelihood that many would complain, and then cure any violations for the few who did. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 969, *supra*, p. 4.) Thus, we may reasonably infer section 1788.17 was intended to deter debt collectors from such belated and partial compliance with the law (*ibid*.), as well as to provide " 'consistent federal and state standards [that] would facilitate compliance and enforcement and provide a level playing field for all engaged in debt collection activity.' " (*Id*. at p. 5.)

NES offers no rationale as to why these purposes would apply only to FDCPA violations and not to Rosenthal Act violations lacking a federal counterpart. Clearly, the lack-of-incentive problems that spurred the enactment of section 1788.17 would also apply to the requirements of the Consumer Collection Notice law, as debt collectors, particularly ones with large consumer bases, would still lack the incentive to preemptively comply as to all consumers knowing they can correct violations individually as complaints are made. And NES's parsed interpretation of section 1788.17 would not further the Legislature's desire for consistent federal and state standards, but would instead make the availability of class action remedies contingent on a legal determination as to whether a federal counterpart exists for the alleged violation.[8]

---

[8]    It may not always be the case that a type-size violation under California law will lack a federal counterpart. California debt collectors must comply not only with the Consumer Collection Notice law, but also with section 1692g of the FDCPA. (§ 1788.17.) While the FDCPA does not incorporate the content requirements of section

13

In light of the statutory language, the legislative history, and the weight of persuasive authorities that have considered this issue, we conclude Timlick was permitted to bring a putative class action for her claim under section 1812.701(b).

## 2. *Applicability of the Pick Off Exception*

Finally, we address whether the pick off exception applies in the circumstances of this case. A typical pick off situation arises " 'when, prior to class certification, a defendant in a proposed class action gives the named plaintiff the entirety of the relief claimed by that individual. The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent. . . . [T]he defendant seeks to avoid exposure to the class action by "picking off" the named plaintiff, sometimes by picking off named plaintiffs serially.' " (*Wallace v. GEICO General Ins. Co.* (2010) 183 Cal.App.4th 1390, 1398–1399 (*Wallace*).)

Under these circumstances, " 'the involuntary receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class representative.' " (*Wallace*, *supra*, 183 Cal.App.4th at p. 1399.) Rather, the trial court must consider whether the named plaintiff can continue to fairly represent the class in light of the individual relief offered by the defendant, an evaluation that in most cases may be performed in the context of a ruling on a motion for class certification. (*Id.* at pp. 1399–1400, relying on *La Sala*, *supra*, 5 Cal.3d at p. 872.) If the named plaintiff cannot do so, the court should allow an opportunity to amend the complaint to redefine the class or to add additional representatives, and if amendment fails, the court should not dismiss the action without giving notice of the dismissal to the members of the putative class. (*La Sala*, at p. 874.)

---

1812.700 (*Khosroabadi v. N. Shore Agency* (S.D. Cal. 2006) 439 F.Supp.2d 1118, 1124–1125) or mandate a particular type-size for initial communications to debtors, the type-size must still be large enough to be easily read and sufficiently prominent to be noticed by the least sophisticated debtor. (*Swanson v. Southern Or. Credit Serv.* (9th Cir. 1988) 869 F.2d 1222, 1225.) Thus, in some cases, a debt collector's initial communication to a debtor may violate both section 1812.701(b) of the Consumer Collection Notice law and section 1692g of the FDCPA.

14

"The policy concerns underlying the 'pick off' exception are the desire to avoid 'revolving door' litigation, whereby the defendant uses a tactic to avoid a class action, to the detriment of putative class members who cannot afford to initiate or join litigation, and inviting a waste of judicial resources." (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 801–802 (*Schoshinski*).) When such a tactic is condoned, "only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual plaintiffs" and impose burdens upon those plaintiffs and the court. (*La Sala*, *supra*, 5 Cal.3d at p. 873.) Because class actions are intended to avoid these burdens, a defendant should not be permitted to pick off the named plaintiff by granting relief that is withheld from the rest of the putative class. Otherwise, such defendants will always be able to defeat a class action and "deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it." (*Ibid*.)

NES argues it did not pick off the named plaintiff within the meaning of these authorities, but rather, it substantively prevailed on the merits of Timlick's individual claim based upon the cure defense provided by section 1788.30(d). On this score, the critical issues are whether the defendant's actions are voluntary and relief is provided to the plaintiff alone. (*Schoshinski*, *supra*, 9 Cal.App.5th at p. 804.) Here, NES's victory was only made possible by its voluntary correction of the type-size violation. NES did not prevail against Timlick in the sense that her allegations were disproven or shown to be meritless. On the contrary, her allegation that NES violated section 1812.701(b)'s type-size requirement was implicitly conceded. Moreover, NES does not argue or point to any evidence in the record that it corrected the alleged violations as to the rest of the putative class. Therefore, just as in a typical pick off scenario, NES voluntarily gave special treatment to the named plaintiff only, resulting in the elimination of her standing to maintain a putative class action. (*Schoshinski*, *supra*, 9 Cal.App.5th at p. 804.)

Finally, the policy concerns underlying the pick off exception are implicated here. The effect of the trial court's dismissal of the action is that putative class members who do not have the financial means to initiate or join the litigation will not obtain any

15

redress.  And any relief for the putative class members would require multiple individual suits, resulting in the kind of revolving door litigation that wastes judicial resources.  (*La Sala*, *supra*, 5 Cal.3d at p. 873.)

For these reasons, we conclude the pick off exception applies to the circumstances of this case.  Accordingly, the trial court erred in dismissing the entire putative class action without first affording Timlick the opportunity to amend her complaint, redefine the putative class, or locate a suitable class representative, and without giving notice to the putative class.  (*La Sala*, *supra*, 5 Cal.3d at p. 872.)

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.

_____

Fujisaki, J.

WE CONCUR:


_____

Siggins, P.J.


_____

Wiseman, J.[*]


A154235


_____

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LISA ARLENE TIMLICK,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>NATIONAL ENTERPRISE SYSTEMS, INC.,<br><br>        Defendant and Respondent. | A154235<br><br>(Lake County<br>Super. Ct. No. CV-416920)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on May 7, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: __May 23, 2019____                    _____SIGGINS, J._____ P. J.

<u>Timlick v. National Enterprise Systems, Inc.</u>

(A154235)

Trial court:   Lake County

Trial Judges:   Hon. Arthur H. Mann

Attorneys:   Consumer Law Center; Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen for Plaintiff and Appellant.

       Ellis Law Group; Mark E. Ellis and Anthony P. J. Valenti for Defendant and Respondent.